# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

JOHNNY ARD,            )
                                        )
          **Petitioner,**      )
                                          )
      **vs.**                  )        **Case No. 4:04CV1370HEA/MLM**
                                          )
DAVE DORMIRE,        )
                                          )
          **Respondent.**     )

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court pursuant to the Petition for Writ of Habeas Corpus filed by Petitioner Johnny Ard ("Petitioner") filed pursuant to 28 U.S.C. § 2254. Doc. 1. Respondent filed a Response to Order to Show Cause Why a Writ of Habeas Corpus Should Not Be Granted. Doc. 9. Petitioner filed a Traverse. Doc. 14. This matter was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1). Doc.11.

## I.
## BACKGROUND

In a Second Amended Information, dated July 1, 1998, Petitioner was charged with the felony of statutory rape in the first degree, in that on November 14, 1995, in the County of Texas, Missouri, Petitioner had sexual intercourse with V.G. who was then less than fourteen years old. Petitioner was charged as a prior offender pursuant to Mo. Rev. Stat. § 558.016 and as a persistent offender pursuant to Mo. Rev. Stat. § § 558.016 and 557.036 in that he had pleaded guilty to the following felonies: (1) on about April 6, 1982, Petitioner pleaded guilty to the felony of sexual assault; (2) on about July 23, 1983, Petitioner pleaded guilty to the felony of sexual assault; (3) on about September 7, 1989, Petitioner pleaded guilty to the felony of burglary in the first degree; and (4) on about

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

December 6, 1989, Petitioner pleaded guilty to the felony of assault in the second degree.[1] Resp. Ex. 4 at 54-55. Petitioner was found guilty as charged by a jury and the court sentenced him to fifty years in the custody of the Missouri Department of Corrections.  Resp. Ex. 4 at 78.

The Missouri appellate court summarized the testimony of David L. Cook, a Summersville police officer, which testimony was given during a hearing on a motion to suppress and at trial, as follows:[2]

1. About 10:45 p.m., November 14, 1995, Cook was exiting his squad car on the square in Summersville. Mr. G___ approached Cook and reported his 13-year-old daughter, V___, had left home with a man whose name Mr. G___ did not know. Mr. G___ said V___ "had been gone for about two and a half, three hours." Mr. G___ described the truck the man was driving.

2. After further conversation with Mr. G___, Cook, who had known [Petitioner] several years, deduced the man referred to by Mr. G___ was [Petitioner].

---

[1]	The Legal File in the matter under consideration includes a First Amended Information  which identifies the victim as "J.R.B." and which alleges the crime with which Petitioner was charged as taking place on June 27, 1996.  Resp. Ex. 4 at 42-43.  The court notes that the Second Amended Complaint is consistent with the proof at Petitioner's trial and as such, the court assumes the Second Amended Complaint correctly reflects the charge against Petitioner.

[2]	In proceedings pursuant to 28 U.S.C. § 2254, a "state court's factual findings carry a presumption of correctness that will be rebutted only by clear and convincing evidence." Hall v. Luebbers, 341 F.3d 706, 712 (8th Cir. 2003) (citing 28 U.S.C. § 2254(e)(1); Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003)), cert. denied, 541 U.S. 996 (2004).  Explicit and implicit findings by state trial and appellate courts are presumed to be correct. Rushen v. Spain,464 U.S. 114, 120, (1983); Marshall v. Lonberger, 459 U.S. 422, 432 (1983); Sumner v. Mata, 449 U.S. 539, 545-47, 550 (1981). Additionally, the Eighth Circuit holds that a habeas petitioner must provide "clear and convincing" evidence "to overcome the presumption of correctness that the law assigns to" findings of the state courts. Ashker v. Class, 152 F.3d 863, 867 (8th Cir. 1998) (citing  28 U.S.C. § 2254(e)(1); 28 U.S.C. § 2254(d)(2);  Smith v. Jones, 923 F.2d 588, 590 (8th Cir. 1991)).  See also  Laws v. Armontrout, 863 F.2d 1377, 1381 (8th Cir. 1988).  The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. See Case v. Mondragon, 887 F.2d 1388, 1393 (10th Cir. 1989) (citing Marshall v. Lonberger, 459 U.S. at 431-32; Cuyler v. Sullivan, 446 U.S. 335, 341-42 (1980)). "Questions of witness credibility are usually considered to be issues of fact." Id.(citing Brown v. Allen, 344 U.S. 443, 506 (1953)).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

3. Cook notified the Texas County sheriff's office about the incident and received permission to go "out into the county" in search of [Petitioner] and V____.

4. Cook drove to the home of [Petitioner's] sister and learned from her that [Petitioner] and V____ had been there. Cook then "drove a few of the county roads" but found neither [Petitioner] nor V____.

5. Cook returned to Summersville and drove to the G____ residence. There, he saw a truck "sitting in front of the house." The truck matched the description Cook had received from Mr. G____. Cook suspected the truck was [Petitioner's].

6. Cook saw [Petitioner] walk out the front door of the G____ residence. Cook, clad in uniform, told [Petitioner] he (Cook) wanted to talk to him. Cook asked [Petitioner] to sit in Cook's squad car. [Petitioner] complied.

7. Mr. G____ came out of the house and motioned to Cook. Cook walked over to Mr. G____. Mr. G____ told Cook that V____ said [Petitioner] had "forced himself on her."

8. Cook walked back to his car and asked [Petitioner] to get out. [Petitioner] complied. Cook told [Petitioner] he (Cook) was going to place him under arrest and put him in handcuffs for his safety and Cook's safety until Cook "could figure out what was going on." Cook handcuffed [Petitioner].

9. Cook then entered the house, taking [Petitioner] with him. V____ was sitting on the floor in a corner. Her hands were "clasped around her knees" and she was "rocking back and forth ... kind of crying, kind of sobbing."

10. Cook asked V____ what happened. V____ told Cook that [Petitioner] had "forced her to have sex."

11. Cook took [Petitioner] outside and told him he was "going to [Texas] [C]ounty for investigation of rape." Cook then placed [Petitioner] in Cook's car and read [Petitioner] his "constitutional rights."

12. Cook drove [Petitioner] to the Summersville Police Department--a two-minute journey--and from there to the Texas County sheriff's office at Houston--a twenty-minute journey.

State v. Ard, 11 S.W.3d 820, 822-23 (Mo. Ct. App. 2000).

The Missouri appellate court further summarized testimony as follows:

Cook never questioned [Petitioner] because, explained Cook, the crime occurred outside Summersville, hence it was not going to be his case. Cook expected the "sheriff's department" to question [Petitioner] after Cook "got him over there."

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

After arriving at the sheriff's office, an incident occurred that cast further suspicion on [Petitioner].

Cook took [Petitioner] to the "booking room" where arrest reports are prepared and arrestees change from civilian clothing into a "jail uniform." The room was equipped with a toilet.

Cook obtained a uniform for [Petitioner] and told him to remove his clothing and put on the uniform. As [Petitioner] was removing his clothing, Cook noticed [Petitioner] was wearing red "Jockey shorts."

The sheriff's dispatcher brought in a bag and told Cook to put [Petitioner's] clothing, including his underwear, into the bag "for evidence." According to Cook, [Petitioner] said "there was no way in hell that he was going to give his underwear for anything, and nobody was going to take them [sic] away from him."

Cook and the dispatcher left the room to obtain assistance from Sergeant Rocky Seiner of the Missouri State Highway Patrol who happened to be at the sheriff's office. About that time, Cook, the dispatcher and Seiner heard the toilet flush. The trio returned to the booking room, where they searched [Petitioner] and the room but never found the underwear.

Meanwhile, V___ had been taken to a hospital where medical personnel "did a rape kit."

William E. Nichols, employed by the Division of Family Services, investigates child abuse and neglect in Judicial Circuit 25. Nichols interviewed V___ around 1:00 p.m., November 15, 1995. He noticed "some scratches, and some slight, light bruising in her shoulder and neck area."

After interviewing V___, Nichols concluded [Petitioner's] truck should be impounded and searched.

A judge issued a search warrant that evening.

The next morning--November 16, 1995--Nichols and Deputy Sheriff Carl Davis of Texas County searched [Petitioner's] truck pursuant to the warrant. They found "long head hairs" and pubic hairs in the passenger compartment. Nichols's testimony:

"Q. Was there anything significant about those hairs themselves that you ... thought they were important, just by looking at them?
A. Red in color.
Q. And, of course, [V___'s] hair is red.
A. Yes."

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Nichols and Davis seized the hairs as evidence. Immediately after the search, Nichols and Davis had [Petitioner] brought from his cell to the "deputies room." There, at 9:50 Davis read [Petitioner] his Miranda rights.

[Petitioner] initially stated he "had not done anything" to V___. The interview continued, as related by Nichols:

"Q. And what happened after that?
A. We discussed some of the evidence that we had obtained, namely, trace evidence, and a rape kit that had been done at the hospital. I advised Mr. Ard that we were there to give him a chance to tell his side of the story, and--and that's what we would like for him to do.
Q. And how did Mr. Ard respond to that?
A. He became quiet, somewhat withdrawn, lowered his head, and finally looked up and said, 'I didn't force her.'
Q. Mr. Nichols, from the time that Mr. Ard sat down in the deputies room, and signed that waiver of rights at 9:50, until the time that he said, 'I didn't force her,' how much time expired?
A. At that time, probably 20 minutes, 25 at the most.
 ....
Q. What happened after that?
A. Mr. Ard then related that--he stated that he hadn't forced her. And that they had crossed a body of water. He got [out] to lock out the hubs on the four-wheel-drive vehicle, he got back in the truck. She came on to him. He had been drinking beer. Said first one thing led to the other, and the next thing he knew he was having sex with her.
Q. And what did he say then?
A. And he said he got to feeling bad about it, because he knew it wasn't right, and he stopped short of ejaculation."

Id. at 823-24.


Petitioner filed a direct appeal in which he raised the following issues: (1) the trial court erred in admitting Petitioner's statement because it was the fruit of an illegal arrest, and (2) the trial court should have declared a mistrial when the prosecutor argued that Petitioner was a danger to the jurors' children and homes. Resp. Ex. 5. On December 14, 2004, the Missouri appellate court affirmed the judgment against Petitioner. Resp. Ex. 7; State v. Ard, 11 S.W.3d 829 (Mo. Ct. App. 2000).

Petitioner filed a pro se post-conviction relief motion. Counsel was appointed and filed a Statement in Lieu of Filing an Amended Motion. Resp. Ex. 8 at 15-16. The trial court dismissed

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Petitioner's post-conviction motion, without prejudice, for failure to prosecute. Resp. Ex. 8 at 17.

Petitioner filed an appeal in which he alleged that the motion court erred in failing to make specific findings of fact and conclusions of law in regard to the issues raised in Petitioner's post-conviction relief motion. Resp. Ex. 9. The Missouri appellate court reversed the decision of the motion court and remanded Petitioner's case because the motion court had not made findings of fact and conclusions of law. Resp. Ex. 11; Ard v. State, 92 S.W.3d 334 (Mo. Ct. App. 2002). Subsequently, the motion court issued a Findings of Fact, Conclusions of Law and Judgment denying Petitioner post-conviction relief. Resp. Ex. 13 at 34. Petitioner appealed. On appeal Petitioner raised the following issue: Petitioner received ineffective assistance of counsel for not calling two witnesses, his sister and his brother-in-law, to testify at his trial. Resp. Ex. 14. By Order dated July 21, 2004, the Missouri appellate court found no errors of law and affirmed the decision of the motion court.[3] Resp. Ex. 16.

On October 8, 2004, Petitioner filed his § 2254 Petition in which he raises the following issues:

(1)     Petitioner was denied his constitutional rights because he was arrested without probable cause; the victim's statement was not reliable and Petitioner's statement should have been suppressed as it is the "fruit of the poisonous tree";

(2)     The trial court should have sua sponte declared a mistrial when the prosecutor asked the jury to convict Petitioner to prevent future threats to the jurors' homes and children;

(3)     Petitioner received ineffective assistance of counsel because his trial counsel failed to call as witnesses Petitioner's brother-in-law and sister, Bill and Heidi Cornell.

---

[3]     In his Petition Petitioner states that he appealed the decision of the Missouri appellate court to the "highest state court." The record before this court does not indicate that Petitioner filed for transfer to the Missouri Supreme Court.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Doc. 1.

### III.
### EXHAUSTION, DEFAULT, and TIMELINESS ANALYSIS

To preserve issues for federal habeas review, a state prisoner must fairly present his or her claims to state courts during direct appeal or in post-conviction proceedings. <u>Sweet v. Delo,</u> 125 F.3d 1144, 1149 (8th Cir. 1997). Failure to raise a claim in a post-conviction appeal is an abandonment of a claim. <u>Id.</u> at 1150 (citing <u>Reese v. Delo</u>, 94 F.3d 1177, 1181 (8th Cir. 1996)). A state prisoner who fails to follow applicable state procedural rules for raising the claims "is procedurally barred from raising them in a federal habeas action, regardless of whether he has exhausted his state-court remedies." <u>Id.</u> at 1151 (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 731-32 (1991)). "[A] prisoner must 'fairly present' not only the facts, but also the substance of his federal habeas corpus claim." <u>Abdullah v. Groose</u>, 75 F.3d 408, 411 (8th Cir. 1996) (en banc) (citation omitted). <u>See also</u> <u>Battle v. Delo</u>, 19 F.3d 1547, 1552 (8th Cir. 1994) ("[B]efore a petitioner can bring a federal habeas action, he must have presented the same legal theories and factual bases to the state courts." (citing <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982); <u>Kenley v. Armontrout</u>, 937 F.2d 1298, 1301 (8th Cir. 1991)). "[F]airly present" means that state prisoners are "required to 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.'" <u>Abdullah</u>, 75 F.3d at 411-12. A state-law claim which is raised in state court which "is merely similar to the federal habeas claim is insufficient to satisfy the fairly presented requirement." <u>Id.</u> at 412.

The United States Supreme Court holds that a state prisoner can overcome procedural default if he or she can demonstrate cause and prejudice for the procedural default. <u>Dretke v. Haley</u>, 541 U.S.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

386, 388-89 (2004). <u>See also</u> <u>Coleman</u>, 501 U.S. at 750 (holding that a state habeas petitioner can overcome procedural default by demonstrating "cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice").

Prior to considering the merits of a state petitioner's habeas claim, a federal court must determine whether the federal constitutional dimensions of the petitioner's claims were fairly presented to the state court. <u>Smittie v. Lockhart</u>, 843 F.2d 295, 296 (8th Cir. 1988). "If not, the federal court must determine if the exhaustion requirement has nonetheless been met because there are 'no currently available, non-futile state remedies,' through which the petitioner can present his claim." <u>Id.</u> (citation omitted).

However, "only a 'firmly established and regularly followed state practice' will bar federal court review." <u>Clark v. Caspari</u>, 274 F.3d 507, 510 (8th Cir. 2001) (quoting <u>Ford v. Georgia</u>, 498 U.S. 411, 423-24 (1991)). In <u>Randolph v. Kemna</u>, 276 F.3d 401, 404 (8th Cir. 2002), the Eighth Circuit held that the law of Missouri does not require "prisoners to pursue discretionary review by petitioning for transfer to the Missouri Supreme Court." The Eighth Circuit concluded, in <u>Randolph</u>, that a state prisoner, seeking federal habeas review, need not seek transfer to the Missouri Supreme Court. <u>See</u> <u>id.</u> at 404-405.

In <u>Duncan v. Walker</u>, 533 U.S. 167, 178-79 (2001), the United States Supreme Court held that "[t]he exhaustion requirement of § 2254(b) ensures that the state courts have the opportunity fully to consider federal-law challenges to state custodial judgment before the lower federal courts may entertain a collateral attack upon that judgment." (citing <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845 (1999); <u>Rose v. Lundy</u>, 455 U.S. 509, 518-519 (1982)). The Court further stated in <u>Duncan</u> that "[t]his requirement 'is principally designed to protect the state courts' role in the enforcement of

8

federal law and prevent disruption of state judicial proceedings.'" 533 U.S. at 179 (citing Rose, 455 U.S. at 518). "The exhaustion rule promotes comity in that 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'" Id. (quoting Rose, 455 U.S. at 518) (quoting Darr v. Burford, 339 U.S. 200, 204 (1950), overruled on other grounds, Fay v. Noia, 372 U.S. 391 (1963)). As stated by the Court in O'Sullivan, 526 U.S. at 844, "[c]omity thus dictates that when a prisoner alleges that his continued confinement for a state court conviction violates federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." The Court in Duncan, 533 U.S. at 180, further acknowledged that the exhaustion requirement is designed to reduce the risk of piecemeal litigation. Thus, "'strict enforcement of the exhaustion requirement will encourage habeas petitioners to exhaust all of their claims in state court and to present the federal court with a single habeas petition.'" Id. (quoting Rose, 455 U.S. at 520).

The court further notes that a habeas petitioner has the burden to show that all available state remedies are exhausted or that exceptional circumstances exist with respect to every claim in his petition. Carmichael v. White, 163 F.3d 1044, 1045 (8th Cir. 1998) (citing Darr, 339 U.S. at 218-19).

While a properly filed state petition for post-conviction relief is pending the 1-year period of § 2244(d)(2) is tolled. Williams v. Bruton, 299 F.3d 981, 982 (8th Cir. 2002). The pivotal question arises, therefore, as to when an application for state post-conviction relief is pending. See id. "The term 'pending' includes the interval between the trial court's denial of postconviction relief and the timely filing of an appeal from the denial." Beery, 312 F.3d at 950 (citing Peterson, 200 F.3d at 1203 ("[O]ne-year limitations period for filing habeas petition was tolled while petitioner sought post-conviction relief in state court, from date when petitioner filed his motion for post-conviction relief up until date when Missouri Court of Appeals affirmed the denial of post-conviction relief."). It is

9

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

not "pending," however, "between the date direct review concludes and the date an application for state postconviction relief is filed." Id. (citing Painter v. Iowa, 247 F.3d 1255, 1256 (8th Cir. 2001)).

Additionally, § 2244(d)(1) establishes a 1-year limitation period on petitions filed pursuant to § 2254. The Court, in Duncan, recognized the need to reconcile the tolling provision of § 2244(d)(2) with the exhaustion requirement of § 2254(b). The Court held that:

> Section 2254(d)(2) promotes the exhaustion of state remedies by protecting a state prisoner's ability later to apply for federal habeas relief while state remedies are being pursued. At the same time, the provision limits the harm to the interest in finality by according tolling effect only to "properly filed application[s] for State post-conviction or other collateral review."

Duncan, 533 U.S. at 179-80.

Respondent contends that Petitioner has procedurally defaulted the issues of Ground 1 and Ground 2. The court notes that Petitioner raised the issues of Grounds 1 and 2 in his direct appeal and the Missouri appellate court considered these issues pursuant to plain error. Authority within the Eighth Circuit is mixed in regard to whether a state prisoner can raise a claim pursuant to a § 2254 petition which has only been reviewed by the state court for plain error. The Eighth Circuit acknowledged in Hornbuckle v. Groose that "'[t]here appears to be a decisional split within our Circuit on whether plain-error review by a state appellate court waives a procedural default by a habeas petitioner, allowing collateral review by this court.'" 106 F.3d 253, 257 (8th Cir. 1997) (quoting Mack v. Caspari, 92 F.3d 637, 641 n.6 (8th Cir. 1996)). In Hornbuckle, 106 F.3d at 257, the Eighth Circuit chose to follow cases holding that where Missouri courts review procedurally defaulted claims of a habeas petitioner for plain error, the federal habeas court may likewise review for plain error. In Thomas v. Bowersox, 208 F.3d 699, 701 (8th Cir. 2000), the Eighth Circuit addressed the merits of a habeas petitioner's claim where the state court had reviewed the claim for plain error. More recently, however, in Evans v. Luebbers, 371 F.3d 438, 443 (8th Cir. 2004), cert.

10

denied, 125 S.Ct. 902 (2005), a panel of the Eighth Circuit held that a habeas claim was procedurally defaulted "notwithstanding the fact that the Missouri Court of Appeals reviewed the claim for plain error." Because the court finds for the reasons stated below that Petitioner's Grounds 1 and 2 are without substantive merit, the court need not determine whether Petitioner's Grounds 1 and 2 are procedurally barred. See also James v. Bowersox, 187 F.3d 866, 869 (8th Cir. 1999). The court will, therefore, consider these grounds for relief on their merits. The court further finds that Petitioner has not procedurally defaulted Ground 3 and that his § 2254 Petition was filed timely.

## IV.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA"), applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).

In Williams v. Taylor, 529 U.S. 362 (2000), the United States Supreme Court set forth the requirements for federal courts to grant writs of habeas corpus to state prisoners under § 2254. The Court held that "§2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in the state court." Id. at 412. The Court further held that the writ of habeas corpus may issue only if the state-court adjudication resulted in a decision that:

> (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal Law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the

11

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Williams, 529 U.S. 412-13.

Williams further holds that the writ will not issue merely because the federal court concludes that the relevant state-court decision erroneously or incorrectly applied clearly established federal law. See id. at 411. "'Rather [the] application [by the state-court] must also be unreasonable.'" Copeland v. Washington, 232 F.3d 969, 973 (8th Cir. 2000) (quoting Williams, 529 U.S. at 411). See also Siers v. Weber, 259 F.3d 969, 973 (8th Cir. 2001).

The Court further explained in Williams that for a state-court decision to satisfy the "contrary to" prong of § 2254(d)(1), the state court must apply a rule that "contradicts the governing law as set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Court's] precedent." 529 U.S. at 406. See also Price v. Vincent, 538 U.S. 634, 640 (2003). It is not necessary for a state court decision to cite, or even be aware of, applicable federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts" federal law. Early v. Packer, 537 U.S. 3, 8 (2002).

For a state-court decision to satisfy the "unreasonable application of" prong of § 2254(d)(1), the state court decision must "identif[y] the correct governing legal principle from [the Supreme] Court's decisions but unreasonably appl[y] that principle to the facts of [a] prisoner's case. Williams, 529 U.S. at 413. See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001). Upon explaining § 2254's legal standard, the Supreme Court held in Penry that "even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Id. at 793 (citing Williams, 529 U.S. at 410-11).

12

The Eighth Circuit has held that "[t]o the extent that 'inferior' federal courts have decided factually similar cases, reference to those decisions is appropriate in assessing the reasonableness of the state court's resolution of the disputed issue." Atley v. Ault, 191 F.3d 865, 871(8th Cir. 1999).

Additionally, § 2254(d)(2) provides that an application for writ of habeas corpus should not be granted unless the adjudication of the claim "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." Further, pursuant to § 2254(e)(1), "[a] state court's determination on the merits of a factual issue is entitled to a presumption of correctness." Boyd v. Minnesota, 274 F.3d 497, 500 (8th Cir. 2001). The state court's factual determinations "must be rebutted by clear and convincing evidence." King v. Kemna, 266 F.3d 816, 822 (8th Cir. 2001). For purposes of federal habeas relief, the state court decision involves an unreasonable determination of the facts in light of the evidence presented in state court proceedings "only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." Lomholt v. Iowa, 327 F.3d 748, 752 (8th Cir. 2003), cert. denied, 540 U.S. 1059 (2003). See also Jones v. Luebbers, 359 F.3d 1005, 1011 (8th Cir. 2004) ("[A] state court decision involves 'an unreasonable determination of the facts in light of th evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record. 28 U.S.C. § 2254(e)(1); Boyd v. Minnesota, 274 F.3d 497, 501 n. 4 (8th Cir.2001)."), cert. denied, 125 S.Ct. 670 (Dec. 6, 2004).

The United States Supreme Court has recently defined the circumstances under which a state court reasonably applied federal law as follows:

> At the same time, the range of reasonable judgment can depend in part on the nature of the relevant rule. If a legal rule is specific, the range may be narrow. Applications of the rule may be plainly correct or incorrect. Other rules are more general, and their meaning must emerge in application over the course of time.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Applying a general standard to a specific case can demand a substantial element of judgment. As a result, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case by case determinations. Cf. Wright v. West, 505 U.S. 277, 308-309, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (KENNEDY, J., concurring in judgment).

Yarborough v. Alvarado, 541 U.S. 652, 124 S.Ct. 2140, 2149 (2004).

The Eighth Circuit has addressed the issue of how to determine whether a state court has addressed a claim on its merits so that the AEDPA standard of review applies. Brown v. Leubbers, 371 F.3d 458 (8th Cir. 2004), cert. denied, 125 S.Ct.1397 (Feb. 28, 2005). The court held in Brown that:

> [W]hat constitutes an adjudication on the merits? From the plain language of the statute and black-letter law, we know that the state court's decision must be a judgment--an adjudication--on a substantive issue--the merits (as compared with a procedural or technical point). A survey of opinions from our sister circuits demonstrates that, beyond these two considerations, resolving the question is not so easy. One thing is clear--no court has established bright-line rules about how much a state court must say or the language it must use to compel a § 2254 court's conclusion that the state court has adjudicated a claim on the merits. That is as it should be, given one court's difficulty in divining the thought processes of another based only on language being used in certain ways, not to mention the comity issues that would be raised. Cf. Coleman v. Thompson, 501 U.S. 722, 739, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) (noting in discussion of procedural default in state habeas cases that the Court has "no power to tell state courts how they must write their opinions" so that reviewing "federal courts might not be bothered with reviewing state law and the record in the case"). We must simply look at what a state court has said, case by case, and determine whether the federal constitutional claim was considered and rejected by that court.

Id. at 461.

Even where the bulk of a state court decision is "devoted to the state-law evidentiary question and whether 'the trial court abused its discretion' in excluding [evidence]," the Eighth Circuit has held that the "'summary nature' of the discussion of the federal constitutional question

does not preclude application of the AEDPA standard." Id. at 462 (citing James v. Bowersox, 187 F.3d 866, 869 (8th Cir.1999)). The court further held in Brown that:

> [It] is not to say that citation to law and a key word from the application of that law--or anything else--is required for us to determine that the claim was adjudicated on the merits. We only hold that they suffice in this case for us to conclude that the Missouri Supreme Court's decision on this claim was an adjudication on the merits.

Id.

Where a federal constitutional question, however, is not adjudicated on its merits in state court proceedings, it is not appropriate for a federal court to apply the standard of § 2254 as amended by the AEDPA, because there is no apparent state-court adjudication to which this standard can be applied. Robinson v. Crist, 278 F.3d 862, 865 (8th Cir. 2002) ("[B]ecause this claim apparently was not adjudicated by the [state] court, we likely should apply the pre-AEDPA standard of review."). Under the pre-AEDPA standard, a habeas petitioner must demonstrate a "'reasonable probability that the error complained of affected the outcome of the trial,' or that the verdict likely would have been different absent the now-challenged [error]." Id. at 865-66 (quoting Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir.1987) (en banc)).

**V.**
**DISCUSSION**

**Ground 1 - Petitioner was denied his constitutional rights because he was arrested without probable cause; the victim's statement was not reliable and Petitioner's statement should have been suppressed as it is the "fruit of the poisonous tree":**

In support of Ground 1 Petitioner argues that the victim's statements were not corroborated by any other independent evidence; that he was arrested on the unsupported word of a thirteen-year-old girl of unknown credibility; and that no physical evidence or other witnesses corroborated the victim's statements. He also contends that he sat for thirty-two hours before being interrogated and that this is twelve hours more than the law allows. Petitioner further contends that the statement in

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

which he said that he had sex with the victim was the product of his unlawful arrest and detention. Petitioner also argues that his detention was in violation of Mo. Rev. Stat. § 544.170 and that his arrest was a pretext to gather further evidence. Petitioner contends that, because his arrest was without probable cause, the statement which he gave was tainted and that, therefore, the statement should have been suppressed. Doc. 1 at 4-7, 10; Doc. 14.

Upon addressing the issue raised in Petitioner's Ground 1 the Missouri appellate court stated:

Appellant testified in support of the motion to suppress. He avowed that immediately after the arresting officer--Cook--advised him of his rights, he (Appellant) said he wanted to speak to a lawyer before answering any questions. Appellant recounted he was never given an opportunity to speak to a lawyer or make a phone call after arriving at the Texas County jail. According to Appellant, when Nichols and Davis interviewed him November 16, 1995, he told them he wanted to speak to a lawyer but was never given that opportunity.

At the conclusion of the evidence, Appellant's lawyer argued that because Appellant asked to speak to a lawyer immediately after Cook advised him of his rights, no further interrogation should have occurred. Consequently, insisted Appellant's lawyer, the interrogation by Nichols and Davis (some thirty-two hours later) was improper, and Appellant's incriminatory statements to them should be suppressed. Appellant's lawyer also asserted:

"Under Supreme Court Rule 22.06, the officer is clearly authorized to seize somebody upon probable cause. But they're only allowed to hold that person, detain that person, for a period of 20 hours. The court file reflects that a warrant was not obtained until November 16th sometime. And that's--that's a long ways from 20 hours. I think it's clear that he was continually incarcerated between midnight on the 14th to the morning of the 16th, when the interrogation took place. We believe that based upon the illegal nature of that detention, that the statement given to the officer at that time should be suppressed."

This court finds nothing in Appellant's motion to suppress (quoted earlier) or in his lawyer's argument (quoted above) presenting the theory that Cook had no probable cause to arrest Appellant--the theory on which Appellant's first point (quoted earlier) hinges. The significance of that is discussed infra. ...

Ard, 11 S.W.3d at 825

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The Missouri appellate court further noted that:

> Cook testified unequivocally that Appellant never asked to speak to a lawyer. Davis testified that after he advised Appellant of his rights at the outset of the interview November 16, 1995, Appellant waived his right to counsel. Nichols testified Appellant never asked to see a lawyer until Nichols and Davis requested Appellant to put his incriminatory oral statements in writing.

Id. at 825 n.10.

Upon considering the issue of Petitioner's Ground 1 the Missouri appellate court further considered that:

> At trial, Mr. G____ testified Appellant drove to the G____ residence about 3:30 p.m., November 14, 1995, and "struck up a conversation" about his (Mr. G____'s) eldest son. V____ was present during the conversation.

> Appellant invited V____ to go deer hunting. Mr. G____ denied permission because Appellant was alone and Mr. G____ "didn't know the man."

> Appellant thereupon departed, but reappeared at the G____ residence about 5:00, accompanied by a man and a woman. Appellant told Mr. G____ the woman was his sister.

> Appellant renewed his request that V____ "go look for a deer." Because Appellant had the other couple with him, Mr. G____ assumed "everything would be all right." He gave V____ permission to go, but said she should return by 9:30. Mr. G____ then took a nap. When he awoke, he asked Mrs. G____ whether V____ had returned. Mrs. G____ said they had returned about 8:30 and requested permission "to go out a little bit longer."

> When V____ failed to return at the appointed time, Mr. G____ drove to the Summersville square and informed Cook. That incident is recounted in paragraph numbered 1 earlier in this opinion.

> Mr. G____ then returned home. About 11:30 p.m., Appellant "drove up with [V____]." The other couple was not in Appellant's truck.

> Appellant and V____ entered the house. Mr. G____ told Appellant he (Mr. G____) had "contacted the law."

> Mr. G____ watched as V____ sat down by the "wood stove." Mr. G____ described V____'s demeanor: "[S]he had an expression of fright on her face ... I could tell that it wasn't just her normal look."

17

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

This court gathers from Mr. G___'s testimony that Appellant remained in the house only briefly, then went out.

Mr. G___ asked V___ whether "that man" did something to her. According to Mr. G___, V___ replied, "Yes, he raped me."

By that time, Cook had arrived. Mr. G___ went out and told Cook, "Why don't you just go ahead arrest that man, because she informed me that he had raped me [sic]."

Cook's action in response to that utterance is set forth in paragraphs numbered 8 through 12 earlier in this opinion.

V___, testifying at trial, said the couple in Appellant's truck was "Billy and Heidi." Upon leaving the G___ residence, the quartet went driving "on the back roads," but saw no deer. Appellant allowed V___ to drive even though she had no license. He offered her beer, which she refused. During the excursion, Appellant tried to put his hand in V___'s shirt.

The quartet returned to the G___ residence. V___ and Heidi entered. While Heidi was in the bathroom, V___ asked Mrs. G___ whether she could stay out a little longer. Mrs. G___ said V___ could remain out one more hour. V___ did not tell Mrs. G___ that Appellant tried to put his hand in V___'s shirt.

After leaving the G___ residence, the quartet eventually went to "Billy and Heidi's house," as Heidi "needed to take her medicine." After watching "music videos," Appellant said V___ should return home "because it was getting late."

Appellant and V___ left, unaccompanied by Heidi and Billy. Appellant drove on an isolated "dirt road" that led to a river. Appellant stopped and got out to "lock the four-wheel drive in." After crossing the river, Appellant exited again to unlock the four-wheel drive.

Upon reentering the truck, Appellant asked V___ if she "wanted to have sex." She replied, "No."

Undeterred, Appellant began "undoing" V___'s "bluejean pants." She tried to push him away, but he held her down by her "upper chest" and around her neck. He then pulled down her underwear and forced his penis into her vagina.

After copulation, Appellant told V___ "not to tell ... anybody about this." He then drove her home. During the journey, she was as close to the passenger door as she could get.

V___'s account of what occurred when she got home was essentially the same as Mr. G___'s account, set forth earlier.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Mrs. G___, called as a witness by Appellant at trial, testified V___ played "Nintendo" after returning home. V___ denied playing Nintendo.

Cook's encounter with V___ is described in paragraphs numbered 9 and 10 earlier in this opinion. Cook mentioned nothing about V___ playing Nintendo.

Mr. G___'s testimony contains no mention of Nintendo.

When Nichols was asked at trial about Appellant's incriminatory statements, Appellant's lawyer lawyer objected, renewing the "arguments" in the motion to suppress (and presumably the oral argument at the suppression hearing). Appellant's lawyer registered no objection that Cook lacked probable cause to arrest Appellant or that Appellant's statements were the fruit of an unlawful arrest.

The trial court overruled the objection and received the statements in evidence.

Appellant's motion for new trial assigned error in the receipt of his incriminatory statements in evidence, averring the statements "were the product of an unlawful detention." When Appellant's lawyer argued the new trial motion to the trial court, he explained the unlawful detention "was due to the fact that Mr. Ard was detained for longer than 20 hours without an arrest warrant coming down." Appellant's lawyer said nothing indicating Cook lacked probable cause to arrest Appellant.

It thus appears to this court that Appellant waited until this appeal to raise the theory that Cook lacked probable cause to arrest him. The absence of probable cause is the cornerstone of Appellant's first point, as illustrated by the argument following it. The argument reads, inter alia:

> "All Cook had to go on was, at best, [V___'s] word of what happened. He had no physical or medical evidence. He had no eyewitness statements. He did not even have any knowledge of [V___'s] reliability....
>
> [T]here was no way Cook could judge [V___'s] reliability, nor was there any corroboration of her tale.... Arresting Johnny was therefore unjustified and illegal. The statements he made, that he had sex with [V___] but did not force her, and where this allegedly took place, were obtained only because of that illegal arrest and detention. The fruit of the poisonous tree doctrine holds that evidence obtained as a direct result of an illegal seizure should be suppressed. Johnny was illegally seized without probable cause, and the fruit of that illegal seizure was his statements." (Citations omitted.)

19

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

Appellant's brief refers to § 544.170, which provides that all persons arrested without warrant shall be discharged within twenty hours unless formally charged with a criminal offense and held by warrant. As we have seen, Appellant's lawyer told the trial court at the suppression hearing that Appellant's detention became illegal upon extending beyond twenty hours.

However, Appellant concedes in this court that a violation of § 544.170 does not automatically make a statement involuntary. <u>See</u>:  <u>State v. Smith</u>, 747 S.W.2d 678, 682 (Mo.App. S.D.1988), where this court, citing <u>Roberts v. State</u>, 476 S.W.2d 490, 494 (Mo.1972), held detention beyond the twenty-hour limit, standing alone, is insufficient to make an otherwise voluntary statement involuntary.

Furthermore, § 544.170 addresses only the length of time an arrestee can be held without being formally charged; it does not address probable cause for an arrest.

<u>Id</u>. at 825-27.

Because Petitioner did not present his theory to the trial court that his incriminating statements to Nichols and Davis were inadmissible, the Missouri appellate court concluded that it could only consider Petitioner's probable cause argument pursuant to Missouri Rule 30.20 which "authorizes an appellate court, in its discretion, to consider plain errors affecting substantial rights when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Applying this standard, the Missouri appellate court found no basis for relief and held as follows:

Probable cause to arrest exists when the facts and circumstances within the knowledge of the arresting officers, and of which they have reasonably trustworthy information, are sufficient to warrant a belief by a person of reasonable caution that the person to be arrested has committed the crime for which he is being arrested. <u>State v. Sidebottom</u>, 753 S.W.2d 915, 923 (Mo. banc 1988), <u>cert. denied</u>, 488 U.S. 975, 109 S.Ct. 515, 102 L.Ed.2d 550 (1988). While the quantum of information necessary to fashion probable cause means more than mere suspicion, its existence must be determined by practical considerations of everyday life on which reasonable persons act and not the hindsight of legal technicians. <u>State v. Heitman</u>, 589 S.W.2d 249, 253 (Mo. banc 1979), <u>cert. denied</u>, 446 U.S. 941, 100 S.Ct. 2164, 64 L.Ed.2d 795 (1980).

A citizen who purports to be the victim of, or to have witnessed, a crime is a reliable informant even though his or her reliability has not theretofore been proven or tested. <u>State v. Whorton</u>, 487 S.W.2d 865, 867 (Mo.1972).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In the instant case, V___'s statement to Cook that Appellant had "forced her to have sex" meant she was both a victim and a witness to the crime of statutory rape in the first degree.

Id. at 828.

The court further noted that:

As recounted in paragraph numbered 10 earlier in this opinion, Cook quoted V___ as saying Appellant "forced her to have sex." At trial, V___ testified she told Cook that Appellant "had raped me." Regardless of which version is accurate, the import of V___'s disclosure was that Appellant had engaged in sexual intercourse with her. Cook already knew from his earlier conversation with Mr. G___ that V___ was thirteen years old.

Id. at 828 n.13.

The Missouri appellate court continued to state that:

Appellant cites State v. Wiley, 522 S.W.2d 281 (Mo. banc 1975), in support of his hypothesis that because V___'s accusation was not corroborated, Cook lacked probable cause to arrest him. Appellant misunderstands Wiley.

In Wiley, the accused's arrest was based on information from an anonymous informant transmitted by phone on a "tip" line. Id. at 284, 287. Upholding the arrest, the opinion said:

"The true inquiry therefore is whether the informant's present information is reliable. As long as the corroboration of the information through other sources, even though the matters are innocuous, reduces the chances of a 'reckless or prevaricating tale,' the information, even though hearsay, may form the basis of probable cause for an arrest."

Id. at 288.

The obvious difference between Wiley and the instant case is that the identity of the individual who supplied the information on which the arrest was based in Wiley was unknown, while in the instant case V___ provided the information in person to the arresting officer, Cook. As V___, by her account, was both a victim and a witness, the controlling case is Whorton, not Wiley.

Furthermore, contrary to Appellant's belief, V___'s accusation was--at least arguably--corroborated, as henceforth explained.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

As recounted earlier in this opinion, Mr. G___ noticed "an expression of fright" on V___'s face when she returned home. When he asked her whether Appellant did something to her, she replied that Appellant raped her. Mr. G___ told Cook about V___'s disclosure before Cook entered the house and questioned V___.

In State v. Hawkins, 778 S.W.2d 780 (Mo.App. W.D.1989), the accused forcibly raped the victim. Id. at 781. The victim screamed. Id. Her screams were heard by her sister, "a house away." Id. When the sister arrived at the victim's house, the accused fled. Id.

At trial, the sister testified, over a hearsay objection, that when she entered the house and asked the victim what happened, the victim replied, "Lee [the accused] had raped her." Id. at 782. Rejecting the accused's claim that the victim's statement to her sister was inadmissible, the court explained:

>  "A spontaneous statement or excited utterance is an exception to the hearsay rule under the rationale that where the statement is made as a result of shock produced by the event, the utterance may be taken as expressing the true belief of the speaker. State v. Griffin, 662 S.W.2d 854, 858 (Mo. banc 1983), cert. denied, 469 U.S. 873, 105 S.Ct. 224, 83 L.Ed.2d 153 (1984). A victim's statement that she has been raped is admissible as an excited utterance. State v. Wilson, 719 S.W.2d 28, 33 (Mo.App.1986).

The statement here was admissible under the above authority as an exception to the hearsay rule. The assault by [the accused] had only just been perpetrated and the shock of the event lends the necessary credibility to the statement." Hawkins, 778 S.W.2d at 782.

Although the record in the instant case does not show how much time elapsed between the copulation and V___'s arrival home, it is inferable that the journey was relatively short. V___, at the first opportunity, told Mr. G___ that Appellant raped her. According to Mr. G___, V___'s facial expression indicated fright. Cook, upon entering the house, observed V___ was "kind of crying, kind of sobbing."

Applying Hawkins, 778 S.W.2d at 782[3], to the facts in the preceding paragraph, this court holds V___'s statement to Mr. G___ that Appellant raped her was arguably substantive evidence. Mr. G___ told Cook about V___'s statement before Cook asked V___ what happened. Thus, when V___ told Cook that Appellant forced her to have sex, Cook had knowledge that V___'s accusation was--at least arguably--corroborated by her earlier statement to Mr. G___.

Furthermore, it is inferable that Appellant flushed his underwear down the toilet during the booking process at the Texas County sheriff's office. That incident,

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

which occurred some thirty minutes or so after Appellant's arrest, buttressed Cook's probable cause to believe Appellant had intercourse with V____.

        As this court fathoms the argument following Appellant's first point, he does not challenge the voluntariness of his statements to Nichols and Davis. Appellant candidly states:

> "This is not an issue of the voluntariness of Johnny's statements. He was given <u>Miranda</u> warnings and was not threatened or mistreated physically. But whether voluntary in that sense or not, the illegal character of the arrest tainted the interrogation that no amount of warnings could purge. The <u>Miranda</u> warning were [sic] not sufficient to remove the taint of this illegal arrest. As the fruit of the poisonous tree of this illegal arrest, Johnny's statement should have been suppressed." (Citations omitted.)

        Emphasizing that this court is reviewing the above contention for only plain error, this court, for the reasons heretofore set forth, holds the receipt in evidence of Appellant's incriminatory statements was not a manifest injustice or miscarriage of justice. Accordingly, plain error relief is unwarranted. <u>State v. Hutchison</u>, 957 S.W.2d 757, 761 (Mo. banc 1997).

<u>Id.</u> at 828-30.

        Pursuant to <u>Williams</u>, this court will consider federal law applicable to the issues raised by Petitioner in Ground 1. Petitioner correctly states that under federal law in order for statements made after an unlawful arrest to be admissible there must be a break in the causal chain. <u>Brown v. Illinois</u>, 422 U.S. 590, 601-602 (1975). In <u>Brown</u> the Supreme Court held that "<u>Wong Sun</u> requires not merely that the statement meet the Fifth Amendment standard of voluntariness but that it be 'sufficiently an act of free will to purge the primary taint.' 371 U.S. at 486, 83 S.Ct. at 416. <u>Wong Sun</u> thus mandates consideration of a statement's admissibility in light of the distinct policies and interests of the Fourth Amendment." <u>Id.</u>

        Petitioner's argument in support of Ground 1, however, relies on the assumption that his arrest was without probable cause. The Eighth Circuit has articulated the standard applicable to whether an arrest is made with probable cause as follows:

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

In dealing with probable cause "as the very name implies, we deal with probabilities. These are ... the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Brinegar v. United States, 338 U.S. 160, at page 175, 69 S.Ct. 1302, at page 1310, 93 L.Ed. 1879. Concededly, mere surmise or suspicion does not validly establish probable cause. See Henry v. United States, 361 U.S. 98, 104, 80 S.Ct. 168, 4 L.Ed.2d 134. "The substance of all definitions of probable cause is a reasonable ground for belief of guilt." ... Since Marshall's time, at any rate, it has come to mean more than bare suspicion: Probable cause exists where "the facts and circumstances within (the arresting officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that" an offense has been or is being committed. Carroll v. United States, 267 U.S. 132, 162 (45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790.)... Brinegar v. United States, supra, 338 U.S. at pages 175, 176, 69 S.Ct. at pages 1310, 1311; Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327. From the foregoing it becomes manifest that there is no set formula or criteria to be followed or applied in determining whether probable cause and reasonable grounds existed within the meaning of those terms as clearly expressed in Draper, supra. That question must be resolved from consideration and analysis of all of the facts and circumstances when viewed in their totality.

Hawkins v. United States, 288 F.2d 537, 540-41 (8th Cir.1961).

Under federal law a credible report from a victim which report gives sufficient detail to suggest the victim was speaking truthfully provides probable cause to make an arrest of the alleged perpetrator. Kiser v. City of Huron, 219 F.3d 814, 815-16 (8th Cir. 2000). When making a warrantless arrest officers are entitled to rely on the veracity of information supplied by the victim of a crime. Id.; Anderson v. Cass County, 367 F.3d 741, 746 (8th Cir. 2004). Also, Fed. R. Evid. 803(2) provides for the excited utterance exception to the hearsay rule. "Excited utterances under this Rule are statements relating to a startling event made while under the stress of excitement caused by the event." United States v. Marrowbone, 211 F.3d 452, 454 (8th Cir.2000). "The rationale for this exception is that excited utterances are likely to be truthful because the stress from the event caused a spontaneous statement that was not the product of reflection and deliberation." Id. (citing Reed v. Thalacker, 198 F.3d 1058, 1061 (8th Cir.1999)). Considerations for determining whether the excited utterance exception to the hearsay rule is applicable pursuant to Rule 803(2) include whether the

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

declarant was under the stress of excitement when he or she made the statements in question, the lapse of time between the startling event and the statements, whether the statements were made in response to an inquiry, the age of the declarant, the characteristics of the event, the physical and mental condition of the declarant, and the subject matter of the statements. Id. at 454.

Upon concluding that there was probable cause to arrest Petitioner, the Missouri appellate court considered Officer's Cook's testimony that the victim's father told him that the victim, who was thirteen years old, had been gone for three hours with a man whom Officer Cook believed to be Petitioner; that subsequently, he saw Petitioner's car and Petitioner at the victim's home; that the victim's father told Officer Cook that the victim told her father that Petitioner forced himself on her; that at that point Officer Cook told Petitioner he was placing him under arrest; that Officer Cook then entered the victim's house where she was sitting on the floor rocking back of forth and crying; and that, when asked what happened, the victim told Officer Cook that Petitioner forced her to have sex with him. In particular, the Missouri appellate court considered that the victim told her father that Petitioner had raped her upon her return home after being with Petitioner and that it was inferable that only a short amount of time had elapsed between the time the victim was raped and when she returned home after being raped. See Marrowbone, 211 F.3d at 454. Upon finding that there was probable cause to arrest Petitioner the Missouri appellate court considered the totality of the facts and circumstances within the arresting officers' knowledge. The court finds, therefore, that the Missouri appellate court's determination that probable cause existed to arrest Petitioner is not contrary to and is a reasonable application of federal law. See Hawkins, 288 F.3d at 540-41. Additionally, the Missouri appellate court's finding that officers arresting Petitioner could properly rely on the statements of the victim to police and the statements of the victim made to her father is not contrary to and is a

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

reasonable application of federal law. See Kiser, 219 F.3d at 815-16; Anderson, 367 F.3d at 746; Marrowbone, 211 F.3d at 454.

In regard to Petitioner's contention that his statement should have been suppressed, the Missouri appellate court considered that Petitioner did not allege that his statement was involuntary but rather argued, as he does before this court, that because his arrest was illegal his statement was "tainted" in a manner which could not be purged by any amount of warnings. In Petitioner's case the State appellate court concluded based on the facts and applicable law that Petitioner's arrest was made with probable cause and that, as such, his argument that his statement should have been suppressed must fail. This conclusion is not contrary to federal law and is a reasonable application of federal law as there was no taint upon Petitioner's statement. See Brown, 422 U.S. at 601-602.

Moreover, in Colorado v. Connelly, 479 U.S. 157, 167 (1986), the United States Supreme Court explained what is required under federal law to determine the voluntariness of a confession. The Court held:

> Whenever the State bears the burden of proof in a motion to suppress a statement that the defendant claims was obtained in violation of our Miranda doctrine, the State need prove waiver only by a preponderance of the evidence. See Nix v. Williams, 467 U.S. 431, 444, and n. 5, 104 S.Ct. 2501, 2509, and n. 5, 81 L.Ed.2d 377 (1984); United States v. Matlock, 415 U.S. 164, 178, n. 14, 94 S.Ct. 988, 996, n. 14, 39 L.Ed.2d 242 (1974). ...
>
> There is obviously no reason to require more in the way of a "voluntariness" inquiry in the Miranda waiver context than in the Fourteenth Amendment confession context. The sole concern of the Fifth Amendment, on which Miranda was based, is governmental coercion. See United States v. Washington, 431 U.S. 181, 187, 97 S.Ct. 1814, 1818, 52 L.Ed.2d 238 (1977); Miranda, supra, 384 U.S., at 460, 86 S.Ct., at 1620. Indeed, the Fifth Amendment privilege is not concerned "with moral and psychological pressures to confess emanating from sources other than official coercion." Oregon v. Elstad, 470 U.S. 298, 305, 105 S.Ct. 1285, 1290, 84 L.Ed.2d 222 (1985). The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on "free choice" in any broader sense of the word. See Moran v. Burbine, 475 U.S., at 421, 106 S.Ct., at 1141 ("[T]he relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

deception.... [T]he record is devoid of any suggestion that police resorted to physical or psychological pressure to elicit the statements"); <u>Fare v. Michael C.</u>, 442 U.S. 707, 726-727, 99 S.Ct. 2560, 2572-2573, 61 L.Ed.2d 197 (1979) (The defendant was "not worn down by improper interrogation tactics or lengthy questioning or by trickery or deceit.... The officers did not intimidate or threaten respondent in any way. Their questioning was restrained and free from the abuses that so concerned the Court in <u>Miranda</u>").

<u>Id.</u> at 167-170.

Also, a Fourth Amendment claim "is not cognizable in a habeas corpus action unless the state has not 'provided an opportunity for full and fair litigation' of the claim." <u>Sweet v. Delo</u>, 125 F.3d 1144, 1149 (8th Cir. 1997) (quoting <u>Stone v. Powell</u>, 428 U.S. 465, 494 (1976). A federal court is not "empowered to examine whether the Missouri courts made errors of law in deciding the Fourth Amendment issues" raised by a State habeas petitioner. <u>Id.</u> (citing <u>Willett v. Lockhart</u>, 37 F.3d 1265, 1270 (8th Cir.1994) (en banc)). In Petitioner's case he has not suggested nor does the record establish that he did not have the opportunity to raise his Fourth Amendment claim through available Missouri procedures. As such, to the extent Petitioner alleges in his Ground 1 a Fourth Amendment violation because his arrest was without probable cause, this aspect of Ground 1 is not cognizable pursuant to Petitioner's § 2254 Petition.

Furthermore, the law is clear that explicit and implicit findings of fact by state trial and appellate courts "shall be presumed to be correct." <u>Blair v. Armontrout</u>, 916 F.2d 1310, 1317-18 (8th Cir. 1990). <u>See also</u> <u>Smith v. Jones</u>, 923 F.2d 588, 590 (8th Cir. 1991); <u>Laws v. Armontrout</u>, 863 F.2d 1377 (8th Cir. 1988); <u>Brown v. Lockhart</u>, 781 F.2d 654, 658 (8th Cir. 1986).[4] The presumption applies to basic, primary or historical facts and the inferences that can properly be drawn regarding them. <u>Case v. Mondragon</u>, 887 F.2d 1388, 1393 (10th Cir. 1989).

_____

[4]        <u>See also</u> note 2, above.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

The question of whether Petitioner's confession was voluntary, however, is a mixed question of law and fact. When dealing with mixed questions of law and fact, the presumption of correctness has a different application. No presumption of correctness attaches to the legal conclusions or determinations reached in mixed questions. Those are reviewed de novo on federal habeas review. "However, the presumption of correctness will continue to apply to any findings of fact underlying mixed questions, typically 'ultimate' constitutional issues such as due process." Case, 887 F.2d at 1393 (citing Rushen v. Spain, 464 U.S.114, 120 (1983); Marshall v. Lonberger, 459 U.S. 422, 431-432 (1983)). This will even be the case when those findings might resolve or dispose of the ultimate mixed question. Case, 887 F.2d at 1393. See also Deputy v. Taylor, 19 F.3d 1485, 1494 (3rd Cir. 1994); Jenner v. Smith, 982 F.2d 329, 331 (8th Cir.1993).

This court notes that Petitioner was given his Miranda rights upon arrest and again just prior to making his confession. Additionally, Officer Cook testified that Petitioner never asked to speak to a lawyer and Officer Nichols testified that Petitioner did not ask to speak to a lawyer until after he was asked to put his statement in writing. See Colorado, 479 U.S. at 167.

In regard to Petitioner's argument that the length of Petitioner's detention made his statement involuntary, the Missouri appellate court noted that Mo. Rev. Stat. § 544.170 does not address probable cause for arrest and held that while Petitioner's detention may have been in excess of the twenty hours designated by Mo. Rev. Stat. § 544.170, such a detention does not automatically make his post-arrest statement involuntary. The Missouri appellate court concluded that because there was probable cause for Petitioner's arrest he cannot rely § 544.170 to justify the suppression of his confession. To the extent that the Missouri appellate court relied on State law upon reaching this conclusion, issues concerning the interpretation and application of state law are not cognizable in federal habeas review. Poe v. Caspari, 39 F.3d 204 (8th Cir. 1994) (holding that it is not the province

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

of a federal habeas court to reexamine state court determinations on state law questions; petitioner's claim was based only on Missouri law and actions of Missouri officials and thus may be addressed only by the Missouri courts); Higgins v. Smith, 991 F.2d 440, 442 (8th Cir. 1993) (holding that error in the interpretation and application of state law does not rise to the level of a constitutional violation cognizable in a federal habeas petition); Jones v. Armontrout, 953 F.2d 404, 405 (8th Cir. 1992) (holding that an incorrect application of a Missouri statute, without more, does not establish that a prisoner is being held in violation of the laws or constitution of the United States, which is a prerequisite for relief under § 2254). To the extent that Petitioner requires the court to interpret and apply Mo.Rev.Stat. § 544.170, the court finds that Petitioner's claim is not cognizable under § 2254.

In conclusion, the court finds that the decision of the State court in regard to the issue raised in Petitioner's Ground 1 is not contrary to federal law, that it is a reasonable application of federal law, and that the State court reasonably applied federal law to the facts of Petitioner's case. As such, the court further finds that Petitioner's Ground 1is without merit and that it should be dismissed.

**Ground 2 - The trial court should have sua sponte declared a mistrial when the prosecutor asked the jury to convict Petitioner to prevent future threats to the jurors' homes and children:**

In support of Ground 2 Petitioner argues that "[i]t is improper for a prosecutor to argue a defendant's criminal proclivities and the necessity of preventing him from committing future crimes" and that is what the prosecutor did in his case. Petitioner further contends that there was no evidence to suggest that he intended to break into jurors' homes. He argues that the trial court had a duty to assure that Petitioner had a fair trial and that by failing to sua sponte declare a mistrial it did not fulfil its duty in this regard. Doc. 14. The portion of the prosecutor's closing argument to which Petitioner refers in Ground 2 is as follows:

> What he's thinking is, you know, if I fess up here, if I say I didn't force her, maybe I can get another four years. Maybe I can get another five years. Well, it's got to stop somewhere. Somebody has got to stand up and say we're not going to

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

let you go out and victimize our children. We're not going to let you break into our homes. No, you ain't going for four years, bud. There's more involved here.

Resp. Ex. 3 at 533.

Upon addressing the issue raised by Petitioner in Ground 2 the Missouri appellate court held as follows:

Appellant's second point avers the trial court plainly erred in failing to declare a mistrial sua sponte when, during closing argument, the prosecutor (according to Appellant) asked the jurors to convict Appellant to prevent future threats to the jurors' children and homes. The prosecutor's argument, says Appellant, led the jury to convict him for reasons wholly irrelevant to his guilt.

Appellant concedes, and the record confirms, that his lawyer registered no objection to the argument. Consequently, no claim of error regarding the argument is preserved for review. State v. Porter, 458 S.W.2d 256, 259 (Mo.1970). Accordingly, as with Appellant's first point, the only relief available to him is for plain error under Rule 30.20.

As observed in State v. Derrick, 965 S.W.2d 418, 419-20 n.1 (Mo.App. S.D.1998), appellate courts are wary of claims that a trial court erred in failing to declare a mistrial sua sponte in a criminal case. That is because generally, the double jeopardy clause of the Fifth Amendment to the Constitution of the United States bars retrial if a judge declares a mistrial in a criminal case without the defendant's request or consent. State v. Tolliver, 839 S.W.2d 296, 299 (Mo. banc 1992). Consequently, a judge who declares a mistrial in a criminal case sua sponte may thereafter be confronted by the defendant's contention that he cannot be retried. Reversing convictions because trial courts fail to declare mistrials sua sponte allows defendants to remain mute when incidents unfavorable to them occur during trial, gamble on the verdict, then obtain a new trial if the verdict is adverse. This puts trial courts in an untenable position and is contrary to the principle that an appellate court will not, on review, convict a trial court of error on an issue which was not put before it to decide. Lincoln Credit Co. v. Peach, 636 S.W.2d 31, 36 (Mo. banc 1982), appeal dismissed, 459 U.S. 1094, 103 S.Ct. 711, 74 L.Ed.2d 942 (1983).

Relief should rarely be granted on assertions of plain error as to closing argument because, in the absence of objection and requests for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. State v. Silvey, 894 S.W.2d 662, 670 (Mo. banc 1995). Accordingly, plain error relief is granted because of improper argument only if it is established that the argument had a decisive effect on the jury's determination. State v. Parker, 856 S.W.2d 331, 333 (Mo. banc 1993).

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

> After reviewing the segment of the prosecutor's argument about which Appellant's second point complains, this court concludes that even if the argument was improper--an issue this court need not decide--the argument was not inflammatory enough to have a decisive effect on the verdict. Appellant is therefore ineligible for plain error relief.

Ard, 11 S.W.3d at 830-31.

Pursuant to Williams, the court will consider federal law applicable to the issue raised by Petitioner in Ground 2. Under federal law, to establish a violation of due process due to improper argument, a habeas petitioner must show that the prosecutor's remarks were so egregious that they fatally infected the proceedings and rendered Petitioner's entire trial fundamentally unfair. Darden v. Wainwright, 477 U.S. 168, 181 (1986); Moore v. Wyrick, 760 F.2d 884, 886 (8th Cir. 1985). See also Culkin v. Purkett, 45 F.3d 1229, 1235 (8th Cir. 1995); Pollard v. Delo, 28 F.3d 887, 890 (8th Cir. 1994). A habeas petitioner can meet this burden only by showing that absent the prosecutor's statement, there is a reasonable probability that the jury would have returned a different verdict. Crespo v. Armontrout, 818 F.2d 684, 687 (8th Cir. 1987). "'[T]he relevant question under federal law is whether the prosecutor's commends so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" Mack v. Caspari, 92 F.3d 637, 643 (8th Cir. 1996) (quoting Darden, 477 U.S. at 181). As further said by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974):

> [C]losing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear. While these general observations in no way justify prosecutorial misconduct, they do suggest that a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations.

Additionally, the Eighth Circuit has held:

> This court has established a two-part test for reversible prosecutorial misconduct: (1) the prosecutor's remarks or conduct must have been improper, and

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

(2) such remarks or conduct must have prejudicially affected the defendant's substantial rights so as to deprive the defendant of a fair trial. See United States v. McGuire, 45 F.3d 1177, 1189 (8th Cir.1995); United States v. Hernandez, 779 F.2d 456, 458 (8th Cir.1985). We employ the following three factors to determine the prejudicial effect of prosecutorial misconduct: "(1) the cumulative effect of such misconduct; (2) the strength of the properly admitted evidence of the defendant's guilt; and (3) the curative actions taken by the court." Hernandez, 779 F.2d at 460; see also United States v. Eldridge, 984 F.2d 943, 946-47 (8th Cir.1993).

United States v. Conrad, 320 F.3d. 851, 855 (8th Cir. 2003).

Indeed, the Eighth Circuit has held that a prosecutor did not commit reversible error when, in his final argument, he asked the jury to "please, please do the right thing" and that "the jury's duty was to return a conviction." United States v. Leach, 429 F.2d 956, 964 (8th Cir. 1970) (citing Keeble v. United States, 347 F.2d 951, 956 (8th Cir. 1965); Koolish v. United States, 340 F.2d 513, 533 (8th Cir. 1965); Cochran v. United States, 310 F.2d 585, 589 (8th Cir. 1962)).

Also, under federal law "[t]he trial court has broad discretion in controlling the direction of opening statements and closing arguments, and a reviewing "court will not reverse absent a showing of abuse of discretion." United States v. Johnson, 968 F.2d 768, 769-70 (8th Cir.1992) (citing United States v. Segal, 649 F.2d 599, 604 (8th Cir.1981)). "The facts of each case must be examined independently to determine if the prosecutor's remarks were unduly prejudicial to the defendant." Id. at 770 (citing United States v. Splain, 545 F.2d 1131, 1135 (8th Cir.1976)).

Upon addressing the argument of Petitioner's Ground 2 the Missouri appellate court concluded that even assuming, arguendo, that the argument was improper, it did not have a decisive effect on the verdict. As such, the court finds that the decision of the Missouri appellate court in regard to Petitioner's Ground 2 is not contrary to federal law and is a reasonable interpretation of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

case. See Darden, 477 U.S. at 181; Conrad, 320 F.3d. 851, 854.  The court finds, therefore, that Petitioner's Ground 2 is without merit and that it should be dismissed.

**Ground 3 - Petitioner received ineffective assistance of counsel because his trial counsel failed to call as witnesses his brother-in-law and sister, Bill and Heidi Cornell:**

In support of Ground 3 Petitioner argues that he was entitled to present a defense; that his counsel was aware of the existence of Bill and Heidi Cornell, his brother-in-law and sister, as witnesses; that counsel failed to interview them; that if the jury had heard the testimony of these witnesses it would have had reasonable doubts concerning the physical evidence against Petitioner; and that, therefore, the failure of his trial counsel to call these witnesses deprived him of his right to present a defense.  Doc. 14.

Upon addressing the issue of Petitioner's Ground 3, the Missouri appellate court held as follows:

> The state presented evidence that red scalp and pubic hair were found in [Petitioner's] truck. [Petitioner] provided no contrary evidence; however, [Petitioner] now claims that his sister and brother-in-law should have been called to the trial as witnesses so the jury could observe that both of these witnesses also had red hair and were in his truck on the night he was arrested. [Petitioner] did not offer any potential testimony of either of the witnesses but merely argues that the jury would have had reasonable doubts about the physical evidence of the red hairs had they seen the red hair on the two witnesses.  We find no merit in [Petitioner's] claim.

> Missouri law recognizes a strong presumption that trial counsel was effective, and [Petitioner] bears the heavy burden of overcoming that presumption by a preponderance of the evidence. (citations omitted).  A defense attorney renders ineffective assistance of counsel only when his conduct "so undermines the proper functioning of the adversary system that the trial cannot be relied on as having rendered a just result."  Hamilton v. State, 31 S.W.2d 124, 127 (Mo. App. S.D. 2000) (quoting State McKee, 856 S.W.2d 685, 693 (Mo. App. S.D. 1993).

Resp. Ex. 16 at 2-3.

The Missouri appellate court then cited the standard for determining whether a criminal defendant has received effective assistance of counsel as set forth by the United States Supreme Court

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

in <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984).  The Missouri appellate court specifically referenced the two-pronged test set forth in <u>Strickland</u>, noting that both prongs of the test must be met for a criminal defendant to establish that he received ineffective assistance of counsel.  Resp. Ex. 16 at 3-4.

The Missouri appellate court further considered the finding of the trial court including that testimony at trial did not place either of the witnesses in the vehicle at the time of the alleged rape; that neither of these people could verify or deny Petitioner's account of the events; and that Petitioner testified that he admitted to investigators that he had sexual intercourse with the victim.  The Missouri appellate court found the trial court's reasoning "to be sound" and, therefore, found "no prejudice to [Petitioner] for the failure of counsel to call his sister and brother-in-law."  Resp. Ex. 16 at 4.  The court also noted that:

> The jury already knew that [Petitioner's] sister and brother-in-law were in the car that night, but it also knew that [Petitioner] had dropped them off at their home prior to taking the victim home by himself.  Neither of these witnesses would be able to rebut the charge of statutory rape because consent or the actions of the parties were simply not a defense. The issue was simply whether sexual intercourse occurred during the time [Petitioner] was alone with the victim.  The physical evidence of red hairs in the truck [was] not critical to the conviction of [Petitioner] of statutory rape.

Resp. Ex. 16 at 4-5.

Pursuant to <u>Williams</u> the court will consider federal law applicable to Petitioner's claim of ineffective assistance of counsel.  Federal law provides that to prove ineffective assistance of counsel, a habeas petitioner must show that: "(1) his counsel so grievously erred as to not function as the counsel guaranteed by the Sixth Amendment; and (2) his counsel's deficient performance prejudiced his defense."  <u>Auman v. United States</u>, 67 F.3d 157, 162 (8th Cir. 1995) (citing <u>Strickland</u>, 466 U.S. at 687.  The "performance" prong of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness."  <u>Strickland</u>, 466 U.S. at 688.  Counsel is "strongly

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. To overcome this presumption, a petitioner must prove that, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Id.

Even if a petitioner satisfies the performance component of the analysis, he is not entitled to relief unless he can prove sufficient prejudice. Id. at 694. To do so, a petitioner must prove that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. The court is not required to "address both components of the [effective assistance of counsel] inquiry if [a petitioner] makes an insufficient showing on one [component]." Strickland, 466 U.S. at 697.

Additionally, the court notes that the Court stated in Strickland, 466 U.S. at 688-89, that:

> In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. Prevailing norms of practice as reflected in the American Bar Association standards and the like, e.g., ABA Standards for Criminal Justice 4-1.1 to 4-8.6 (2d ed. 1980) ("The Defense Function"), are guides to determining what is reasonable, but they are only guides. No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. (citation omitted). ...
>
> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. (citation omitted). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

strategy."(citation omitted). There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way. (citation omitted).

Petitioner in the matter under consideration was convicted of statutory rape pursuant to Mo. Rev. Stat. § 566.032.1 which provides that a person commits the crime of statutory rape in the first degree if he has sexual intercourse with another person who is less than fourteen years old; the victim in Petitioner's case was thirteen years old at the time of the alleged statutory rape. As noted by the Missouri appellate court, because Petitioner admitted having sexual intercourse with the victim the presence of red hairs in the truck, which red hairs Petitioner suggests could have belonged to either Bill or Heidi Cornell, was not relevant. As such, Petitioner's argument that he was prejudiced by the failure of his counsel to secure the testimony of Bill and Heidi Cornell must fail. In regard to the standard which the Missouri appellate court applied to Petitioner's allegation that he received ineffective assistance of counsel, the court finds that upon relying on the two-pronged test of Strickland the Missouri appellate court's decision is not contrary to federal law and is a reasonable application of federal law. Additionally, the Missouri appellate court reasonably applied federal law to the facts of Petitioner's case. The court finds, therefore, that Petitioner's Ground 3 is without merit and that it should be dismissed.


V.
CONCLUSION

For the reasons stated above, the court finds that Petitioner Grounds 1-3 are without merit. As such, Petitioner's § 2254 petition for habeas relief should be denied in its entirety. The undersigned further finds that the grounds asserted by Petitioner do not give rise to a any issues of constitutional

36

PDF created with FinePrint pdfFactory trial version www.pdffactory.com

magnitude.  Because Petitioner has made no showing of a denial of a constitutional right, Petitioner should  not be granted a certificate of appealability in this matter.  See Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY RECOMMENDED** that the Petition filed by Petitioner for habeas corpus pursuant to 28 U.S.C. § 2254 be **DISMISSED**; [1]

**IT IS FURTHER RECOMMENDED** that for the reasons stated herein, any motion by Petitioner for a certificate of appealability should be **DENIED**.

The parties are advised that Petitioner has eleven (11) days in which to file written objections to this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact.  See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).


/s/Mary An n L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this 27th  day of  September, 2005.

PDF created with FinePrint pdfFactory trial version www.pdffactory.com